# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| KENDRA MABRY, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 2:16-CV-402 JVB |
| CITY OF EAST CHICAGO, et al., | |
| Defendants. | |

## OPINION AND ORDER

This matter is before the Court on the motion of Defendants City of East Chicago and its mayor, Anthony Copeland (sometimes collectively referred to as the "City Defendants"), to dismiss Plaintiffs' complaint as to them pursuant to Federal Rules of Civil Procedure 12(b)(6) and (7) (DE 9).

### A.    Plaintiffs' Complaint

This action is brought by Hispanic and African-American residents of East Chicago, Indiana ("Tenants"), who lived at the East Chicago Housing Authority ("ECHA") affordable housing development know as the West Calumet Housing Complex ("Complex").  According to the complaint, the population of East Chicago is 42.9 percent African-American and 50 percent Hispanic.  The residents of the Complex are also overwhelmingly African-American and Hispanic. The Tenants allege that the City Defendants, and co-defendants ECHA and its director, Tia Cauley (the "ECHA Defendants"), knew or should have known that the Complex was contaminated with lead, arsenic, and other toxic substances.  Despite this knowledge, the City Defendants and ECHA Defendants allowed Tenants to live there without taking any steps to

inform them of the risks. Then, in the summer of 2016, the Tenants were told to move with little notice, although the demolition of the complex had been planned sometime earlier.[1] The Tenants attached to their complaint a letter from Copeland to the residents, sent in June or July 2016, in which he stated the City and ECHA had recently been informed by the EPA that the ground at the Complex was highly contaminated with lead and arsenic and told them "we feel it is in your best interests to temporarily relocate your household to safer conditions." (Compl., DE 1 at 16.)

The Tenants allege that the City and ECHA Defendants' failure to protect them, concealment of the existence of lead and arsenic, and plans to demolish the Complex when it was economically convenient constitute intentional discrimination on the basis of their race, national origin, and familial status. They also claim that these defendants have subjected them to what they characterize as degrading and humiliating treatment in the form of excessive police patrols and limited ingress to and egress from the Complex. They allege that the plan to demolish the Complex, concealment of health risks and failure to mitigate them, unfair policing strategy, and denial of free ingress and egress at the Complex violate several provisions of the Fair Housing Act.[2] They further claim that the City and ECHA defendants run afoul of 42 U.S.C. § 1983, because in failing to give the Tenants notice and the opportunity to be heard, they

---

[1] The complaint refers to but does not attach as an exhibit ECHA's 2015 Plan and 5-Year Plan Update that suggests the ECHA planned to demolish the Complex by the end of 2016, but we are not told when the Plan was established.

[2] Tenants allege violations of the following provisions of the FHA:
[I]t shall be unlawful–
(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
42 U.S.C. § 3604(a) and (b).

2

deprived the Tenants of their due process rights secured by the Fourteenth Amendment and denied them equal protection, as guaranteed under the same Amendment. Finally, they claim that the City and ECHA defendants violated 42 U.S.C. § 1982, which provides "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

B.     **Standard for Evaluating a Motion to Dismiss**

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the pleadings, not to decide the merits of the case. *See Gibson v. Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).[3] As the Supreme Court has stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably

---

[3] In *Twombly*, the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [*Conley v. Gibson*, 355 U.S. 42, 47 (1957)] formulation that a pleading 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id.* (citing *Twombly*, 550 U.S. at 556).

Federal Rule of Civil Procedure 12(b)(7) allows the defense of failure to join a party under Rule 19 to be presented by motion. Under Rule 19(a)(1), a person must be joined as a party if, in that person's absence, the court cannot accord complete relief among existing parties or the absent person claims an interest relating to the subject of the action and is situated such that without his presence, his ability to protect his interest may be impaired, or may leave an existing party to a substantial risk of incurring inconsistent obligations.

**C.     Rule 12(b)(7)**

Turning first to the City Defendants' claim that Plaintiffs' action should be dismissed under Rule 12(b)(7), they assert that the Indiana Department of Environmental Management (IDEM), the Environmental Protection Agency (EPA) and the current or former directors of each are indispensable parties. Without explanation, they proclaim in their brief in support of their motion that the City cannot receive complete relief without them. Their only basis for this conclusion is the fact that the complaint states that the EPA and IDEM entered into an agreement with two other defendants for a clean-up of lead and arsenic contamination in East Chicago without giving Tenants notice of the agreement. The City Defendants conclude that "[i]t can hardly be argued that EPA and IDEM are *not* parties that should have been joined." (DE 10 at 10.) These naked assertions utterly fail to convince the Court that the absent entities should have been joined. Accordingly, the Court will not dismiss this action on that ground.

**D.    Rule 12(b)(6)**

The City Defendants first argue that the claims against Copeland, in both his individual and official capacities, must be dismissed. They are correct insofar as suing him in his official capacity under 42 U.S. C. § 1983 is tantamount to suing the City, which is already a defendant. *See Monell v. N.Y.C. Dep't of Social Services*, 436 U.S. 658, 690, n. 55 (1978). Thus all § 1983 claims against Copeland in his official capacity are redundant and will be dismissed.

With respect to the individual capacity claims, the City Defendants argue that the Tenants have failed to show in their complaint that Copeland personally discriminated against them or caused any constitutional deprivation. To state a claim against a public official in his personal capacity under § 1983, the complaint must allege facts to show that the official was personally responsible for the deprivation of a constitutional right. A defendant has personal responsibility if he directed the conduct causing the constitutional violation or if it occurred with his knowledge or consent. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

The complaint does allege facts that show Copeland was personally involved in the decision to evacuate the Complex in 2016, but not that he participated with ECHA in the formulation of the earlier plan to demolish it, that he personally knew about contamination there but failed to protect the Tenants, or that he was personally involved in the conduct the Tenants characterize as degrading and humiliating. In any event, even if Copeland's personal involvement is adequately pleaded, the Tenants' allegation that his wrongful acts constitute intentional discrimination against them because of their race, national origin, and familial status is a bare assertion that amounts to nothing more than the formulaic recitation of the elements of a discrimination claim. As such it is not entitled to be accepted as true. *See Iqbal*, 556 U.S. at

680–81. Disregarding this conclusion, the complaint contains no factual allegations to plausibly suggest that Copeland's actions were taken for the purpose of intentionally adversely affecting Tenants because of their membership in protected groups. This flaw dooms their claims against the City Defendants for intentional discrimination under the FHA in Count I, under 42 U.S.C. § 1982 in Count V, and under the Equal Protection Clause in Count VI in their complaint.

The Court next considers the Tenants' claim in Count III of their complaint that the City Defendants' actions and policies have had, and continue to have, a substantial adverse, disparate impact on Hispanic and African-American households and households with children in violation of the FHA.[4] In *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 135 S.Ct. 2507, 2525 (2015), the Supreme Court held that disparate-impact claims are cognizable under the FHA.

The City Defendants have not specifically addressed this claim in their brief in support of their motion to dismiss or offered the Court any guidance on what factual allegations a disparate impact claim must contain in order to survive a motion to dismiss. Nor is their discussion of *Metropolitan Housing Development Corporation v. Arlington Heights*, 558 F.2d 1283 (7th Cir. 1977), in their reply brief helpful because the Court there was not deciding a Rule 12(b)(6) motion. However, that case suggests that the discriminatory effect that is prohibited by the FHA is the perpetuation of segregated housing. *Id.* at 1291–93. In the instant case, Plaintiffs have pleaded that the City's population is 42.9 percent African-American and 50 percent Hispanic and

---

[4] In Count III the Tenants also claim the City Defendants violated a HUD regulation that forbids enacting or implementing land-use rules, ordinances, policies, or procedures that restrict or deny housing opportunities or otherwise make housing unavailable because of race, national origin, or familial status. 24 CFR § 100.70(d)(5). But this is not a disparate impact claim. It duplicates their claim for intentional discrimination under the FHA and fails to state a claim because the Tenants have not alleged any non-conclusory facts to plausibly suggest intentional discrimination.

that the tenants of the 346-unit Complex who are being displaced are overwhelmingly African-American and Hispanic. Accepting these allegations as true, it cannot be said that closing the Complex will have a significant impact on the racial and ethnic composition of the City, much less perpetuate segregated housing. Accordingly, the Court will dismiss Count III as to the City Defendants.

Finally, the Court examines Count IV. Tenants' complaint alleges that their rights under the Due Process Clause of the Fourteenth Amendment were violated when the City Defendants ordered them to leave their homes in the Complex without being afforded adequate notice and an opportunity to be heard. The City Defendants present no reasoned argument as to why the Tenants' complaint fails to state a claim. They assert that because the Tenants allege in their complaint that the Complex is controlled and maintained by the ECHA, they have no property interest protected by the Fourteenth Amendment. However, the fact that they allege they are tenants at the Complex implies that they have leases. It cannot be seriously argued that a lease doesn't qualify as a property interest that is entitled to due process protection. *See, e.g. Turner v. Chi. Housing Auth.*, 760 F .Supp. 1299, 1309 (N.D. Ill. 1991).

The City Defendants maintain that they were confronted with an extraordinary situation and special need for prompt action to protect the Tenants' health safety, and welfare, which relieved them of need to provide a hearing before evacuating them. But surely, whether an emergency evacuation of the Complex without a pre-deprivation hearing was necessary under the circumstances described in the complaint—where Tenants allege, in essence, that the claimed emergency was merely a pretext to remove them in order to accomplish the already-planned demolition of the Complex— is a question of fact that cannot be resolved on a motion to dismiss.

7

Accordingly, Count IV will not be dismissed.

In the conclusion of their response brief, the Tenants ask for leave to amend their complaint if the motion to dismiss is granted. However, the Court is not convinced that the defects in the complaint are curable. If the Tenants want to amend their complaint, they must file a motion for leave to amend, with the proposed amended complaint as an attachment, together with a supporting brief to show that amendment would not be futile.

**E.     Conclusion**

For the foregoing reasons, the motion of defendants City of East Chicago and Anthony Copeland to dismiss the Tenants' claims against them is **GRANTED IN PART** and **DENIED IN PART**. All claims against Anthony Copeland in his official capacity are dismissed with prejudice. Counts I, III, and V are dismissed without prejudice as to all the City Defendants. Count IV remains. Because there are additional motions to dismiss pending in this case, the Tenants will be given twenty-eight days after the entry of the order disposing of the last motion within which to file a motion for leave to amend their complaint.

SO ORDERED on September 27, 2017.

s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
