UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| KENDRA MABRY, *et al.*, | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:16-CV-402-JVB-JEM |
| | ) | |
| CITY OF EAST CHICAGO, *et al.*, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendants East Chicago Housing Authority and Tia Cauley's Motion to Dismiss [DE 53], filed on April 21, 2017. Plaintiffs filed a response on June 19, 2017, and East Chicago Housing Authority and Cauley filed a reply on July 17, 2017.

## BACKGROUND

This action is brought by Hispanic and African-American residents of East Chicago, Indiana (the "Tenants"), who lived at the East Chicago Housing Authority (ECHA) affordable housing development known as the West Calumet Housing Complex (the "Complex"). According to the complaint, the population of East Chicago is 42.9 percent African-American and 50 percent Hispanic. The residents of the Complex are also predominantly African-American and Hispanic. The Tenants allege that the City Defendants, and Co-Defendants ECHA and its director, Tia Cauley (the "ECHA Defendants"), knew or should have known that the Complex was contaminated with lead, arsenic, and other toxic substances. Despite this knowledge, the City Defendants and ECHA Defendants allowed the Tenants to live there without taking any steps to inform them of the risks. Then, in the summer of 2016, the Tenants were told to move with little

notice, although the demolition of the Complex had been planned sometime earlier.[1] The Tenants attached to their complaint a letter from the Mayor of East Chicago to the Complex's residents, sent in June or July 2016, in which he stated the City and ECHA had recently been informed by the EPA that the ground at the Complex was highly contaminated with lead and arsenic and told them "we feel it is in your best interests to temporarily relocate your household to safer conditions." (Compl. Ex. A, ECF No. 1).

The Tenants allege that the City and ECHA Defendants' failure to protect the Tenants, concealment of the existence of lead and arsenic, and plans to demolish the Complex when it was economically convenient constitute intentional discrimination on the basis of the Tenants' races, national origins, and familial statuses. They also claim that these Defendants have subjected them to degrading and humiliating treatment in the form of excessive police patrols and limited ingress to and egress from the Complex. They allege that the plan to demolish the Complex, concealment of health risks and failure to mitigate them, unfair policing strategy, and denial of free ingress and egress at the Complex violate several provisions of the Fair Housing Act (FHA).[2] They further claim that the City and ECHA Defendants violated 42 U.S.C. § 1983 because, in failing to give

---

[1] The complaint refers to but does not attach as an exhibit ECHA's 2015 Plan and 5-Year Plan Update that suggests the ECHA planned to demolish the Complex by the end of 2016, but the complaint does not allege when the Plan was established.

[2] Tenants allege violations of the following provisions of the FHA:

> [I]t shall be unlawful–
>
> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a) and (b).

the Tenants notice and the opportunity to be heard, they deprived the Tenants of their due process rights secured by the Fourteenth Amendment and denied them equal protection, as guaranteed under the same Amendment. Finally, they claim that the City and ECHA Defendants violated 42 U.S.C. § 1982, which provides "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

## LEGAL STANDARD

Because the ECHA Defendants filed an answer to the complaint before filing the instant motion, the instant motion is a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Rule 12(c) motions are evaluated under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).

In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn from them. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008). To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must meet Rule 8(a)'s requirement to make "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so that the party defending against the claim has "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Then, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo*, 526 F.3d at 1082.

**ANALYSIS**

The Tenants purport to bring claims against the ECHA Defendants for violation of the FHA through intentional discrimination, violation of the FHA based on disparate impact, violation of the Fourteenth Amendment right to due process of law as enforceable by 42 U.S.C. § 1983, violation of the right to enjoy property rights to the same extent as white citizens as enforceable by 42 U.S.C. § 1982, and violation of the Fourteenth Amendment right to equal protection under the law as enforceable by 42 U.S.C. §1983.

### A. Fair Housing Act – Intentional Discrimination

The ECHA Defendants argue that the Tenants make only general conclusory allegations and fail to satisfy *Iqbal* and *Twombly*. In an FHA claim, "[i]t does not take much to allege discrimination, but one essential allegation [is] . . . that someone else has been treated differently." *Wigginton v. Bank of America Corp.*, 770 F.3d 521, 522 (7th Cir. 2014) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Swanson v.Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010)). There is no allegation that people outside of the alleged classes—African-American and Hispanic people and households with children—were treated differently than people who are members of one or more of these classes. Therefore, the Court dismisses this claim.

### B. Fair Housing Act – Disparate Impact

The Tenants claim that the ECHA Defendants' actions and policies have had, and continue to have, a substantial adverse, disparate impact on Hispanic and African-American households and households with children in violation of the FHA.[1] In *Texas Department of Housing & Community*

---

[1] The Tenants also claim the ECHA Defendants violated a HUD regulation that forbids enacting or implementing land-use rules, ordinances, policies, or procedures that restrict or deny housing opportunities or otherwise make housing unavailable because of race, national origin, or familial status. 24 CFR § 100.70(d)(5). But, this is not a disparate impact claim. It duplicates their claim for intentional discrimination under the FHA and fails to state a claim because the Tenants have not plausibly alleged intentional discrimination.

*Affairs v. Inclusive Communities Project, Inc.*, 135 S.Ct. 2507, 2525 (2015), the Supreme Court held that disparate-impact claims are cognizable under the FHA. "[A] disparate impact claim under the FHA requires allegations that Defendants' actions, despite being unintentional, had a 'discriminatory effect' upon a protected class." *County of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 966 (N.D. Ill. 2015) (citing *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1289-90 (7th Cir.1977)).

The Tenants have failed to allege a discriminatory effect on a protected class. They allege that the Complex's tenants "are overwhelmingly African-American and Hispanic" and that East Chicago lists its population as 42.9% African-American and 50% Hispanic. (Compl. ¶ 22). Plaintiffs further allege that East Chicago "says that African-American and Hispanic people experience greater affordable housing need in East Chicago." *Id*. This allegation, however, begs the question: Greater than what? Do African-American and Hispanic people experience greater affordable housing need in East Chicago than they do in Lake County, Indiana, as a whole? In northwest Indiana? The state of Indiana? Or, do they experience greater affordable housing need in East Chicago than non-African-American and non-Hispanic people do in East Chicago? Assuming that 100% of the Complex's residents were affected by the ECHA Defendants' actions, the Court cannot determine, for example, whether these acitons disparately affected East Chicago's African-American and Hispanic population when compared to the City's Caucasian population, or whether this particular affordable housing complex's racial demographics differ from those of other affordable housing complexes in the area, which perhaps were not ordered to be vacated.

The only allegations are that East Chicago and the Complex are both majority-minority in their demographics. This is not enough to state a disparate impact claim. While Plaintiffs, in a conclusory manner, allege that there is a "substantial adverse, disparate impact on Hispanic and

5

African-American households, and households with children," they do not allege the percentage of affected households within the protected categories and outside of the protected categories or any other facts setting out a plausible claim of disparate impact. (Compl. ¶ 53). Naked assertions are not enough. There is no indication of how the ECHA Defendant's actions affected members who are not part of these protected classes. Without allegations of a disparity, Plaintiffs have not stated a disparate impact claim.

### C. Fourteenth Amendment – Due Process

The Tenants allege that their rights under the Due Process Clause of the Fourteenth Amendment were violated when the ECHA Defendants ordered them to leave their homes in the Complex without being afforded adequate notice and an opportunity to be heard. The ECHA Defendants argue that, due to insufficient factual allegations, Tenants' complaint fails to state a claim. However, the fact that the Tenants allege they are tenants at the Complex implies that they have leases. It cannot be seriously argued that a lease doesn't qualify as a property interest that is entitled to due process protection. *See, e.g. Turner v. Chi. Housing Auth.*, 760 F .Supp. 1299, 1309 (N.D. Ill. 1991). The Tenants further allege that they were deprived of that property interest by being ordered to leave their homes and that they were not given an opportunity to be heard or adequate notice.

The ECHA Defendants maintain that they had to relocate the Tenants and were considering demolition of the Complex because of potential health risks associated with lead and arsenic identified on the Complex. But surely, whether relocation of the Tenants without a pre-deprivation hearing was necessary under the circumstances described in the complaint—where the Tenants allege, in essence, that the claimed health risks were merely pretext to remove the Tenants in order

to accomplish the already-planned demolition of the Complex—is a question of fact that cannot be resolved on a motion to dismiss. Accordingly, Count IV will not be dismissed.

### D. 42 U.S.C. § 1982 – Property Rights

Under 42 U.S.C. § 1982, "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." "To state a claim under § 1982, plaintiffs must allege that the defendant[s] had a racial animus, intended to discriminate against the plaintiff[s], and deprived the plaintiff[s] of protected rights because of the plaintiff[s'] race." *Whisby-Myers v. Keikenapp*, 293 F. Supp. 2d 845, 850 (N.D. Ill. 2003) (citations omitted). The Tenants have failed to plausibly allege racial animus or that the deprivation of their property rights was because of their race. They allege that East Chicago in general and the residents of the Complex specifically are "overwhelmingly African-American and Hispanic," (Compl. ¶ 22, ECF No. 1), and that the ECHA Defendants planned to demolish the Complex before lead was discovered on the premises, *id.* at ¶ 23, but these allegations fall short of the required elements. Without allegations of how non-members of the protected class were treated or factual allegations supporting racial animus, it is hard to see how any actions by the ECHA Defendants could be considered discriminatory. The Court dismisses this claim.

### E. Fourteenth Amendment – Equal Protection

To state an equal protection claim, the Tenants must allege that the ECHA Defendants discriminated against them based on their membership in a definable class. *Word v. City of Chicago*, 946 F.3d 391, 396 (7th Cir. 2020). Again, as found above, because there are no allegations of how non-members of the protected class were treated, the Court cannot find that the Tenants were denied equal protection of the law.

7

The Tenants cite *Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012), for the proposition that they need not show that non-class members were treated more favorably. However, *Geinosky* was a class-of-one claim for alleged harassment by public officials, and that court found that it would be a simple matter to find someone outside of the class (that is, anyone other than the plaintiff) who did not experience the alleged harassment—two dozen bogus parking tickets. *Id.* at 748. Here, where the claim is that a whole class was denied equal protection of the law, it is not as simple to assume that there exists a similarly situated individual outside of the classes who received better treatment. For example, it could be that all childless Caucasian tenants of the Complex (and other ECHA-managed facilities) were subject to the same to the same treatment alleged in Paragraph 36 of Tenants' complaint. It could be that all ECHA properties with contaminant levels comparable to the Complex's were ordered to be vacated in substantially similar manners regardless of demographic differences. The Court will require the Tenants to plausibly allege that it was their alleged protected classes—race and/or familial status—that caused the alleged unequal protection.

### F. Defendant Tia Cauley as a Party

Defendant Cauley argues that the claims against her in her individual and official capacities must be dismissed. The official capacity claims brought under 42 U.S.C. § 1983 are redundant with the claims brought against ECHA, so the § 1983 claims against Cauley in her official capacity are dismissed. *See Monell v. N.Y.C. Dep't of Social Services*, 436 U.S. 658, 690, n. 55 (1978).

However, Cauley is named as a defendant in her individual capacity in the caption of the complaint, and the Tenants present allegations of her actions. *See, e.g.*, (Compl. ¶¶ 24, 34, 36, 55, ECF No. 1). Therefore, the Court will not separately dismiss claims brought against Cauley in her individual capacity.

8

### G. Judicial Notice

The ECHA Defendants ask the Court to take judicial notice of a United States Department of Housing and Urban Development Preliminary Voluntary Compliance Agreement and Title VIII Conciliation Agreement, (*see* Mot. Ex. 1, ECF No. 53-1), and of a State of Indiana Declaration of Disaster Emergency (East Chicago), (*see* Mot. Ex. 2, ECF No. 53-2).

The Court declines to take judicial notice of these documents, as their contents would not affect the Court's analysis. Presumably, the ECHA Defendants intend for the Court to determine that, based on these documents, the ECHA Defendants did not act discriminatorily toward the Tenants and sufficient due process was afforded. As to the Conciliation Agreement, it is an agreement to which Plaintiffs are not a party. As to the Declaration, it was issued after the complaint was filed and the actions at issue in it were made.

### H. Leave to Amend

Consistent with the Court's prior orders on motions to dismiss in this case, the Tenants will be given leave to file a motion for leave to amend their complaint.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** Defendants East Chicago Housing Authority and Tia Cauley's Motion to Dismiss [DE 53]. The Court **DISMISSES without prejudice** (1) the Fair Housing Act claims for intentional discrimination and disparate impact, (2) the § 1982 claim, and (3) the Equal Protection Clause claim. The Court **DISMISSES with prejudice** the § 1983 claims against Cauley in her official capacity. The Due Process claim **REMAINS PENDING** as to ECHA and Cauley in her individual capacity.

The Tenants have twenty-eight days after the entry of this Opinion and Order within which to file a motion for leave to amend their complaint.

SO ORDERED on February 11, 2020.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT
