UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| KENDRA MABRY, *et al.*, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:16-CV-402-JVB-JEM |
| | ) | |
| CITY OF EAST CHICAGO, *et al.*, | ) | |
|     Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Leave to File First Amended Complaint [DE 91], filed April 13, 2020, and a Request for Judicial Notice in Support of Atlantic Richfield Company and BP Products North America Inc.'s Opposition to Plaintiffs' Motion for Leave to File First Amended Complaint [DE 106], filed May 27, 2020.

**I.    Background**

Plaintiffs, residents of the East Chicago Housing Authority ("ECHA") affordable housing development known as the West Calumet Housing Complex ("Complex") in East Chicago, Indiana, filed a Complaint on September 15, 2016. It included claims against Defendants for violations of the Fair Housing Act ("FHA"), the Fourteenth Amendment right to due process of law, the Fourteenth Amendment right to equal protection, and of Plaintiffs' property rights under 42 U.S.C. § 1982, arising out of the eviction of the Complex in the summer of 2016. Plaintiffs allege that Defendants knew or should have that the Complex was contaminated with toxic substances, including arsenic and lead, but hid the extent of the contamination from the Complex's residents. In June or July of 2016, tenants received a directive signed by East Chicago Mayor

Anthony Copeland stating that the City of East Chicago and ECHA had recently been informed of the contamination and that the Complex residents needed to relocate quickly.

Defendants all filed motions to dismiss the original Complaint. On September 27, 2017, District Court Judge Joseph S. Van Bokkelen entered two opinions. One dismissed with prejudice all claims against Defendant Anthony Copeland in his official capacity as Mayor of East Chicago, and dismissed all Plaintiffs' claims against Mayor Copeland in his individual capacity and Plaintiffs' claims against the City of East Chicago (collectively, "City Defendants") for violations of the FHA, § 1982, and the Equal Protection clause, with leave to file a motion to amend the Complaint. [DE 76]. The second dismissed all the claims against BP Products North America, Inc., Atlantic Richfield Company, and E.I. du Pont de Nemours and Company (the "Corporate Defendants"). [DE 77]. On February 11, 2020, Judge Van Bokkelen entered a third opinion dismissing with prejudice all claims against Defendant Tia Cauley in her official capacity as director of ECHA and dismissing Plaintiffs' claims against Defendant ECHA and Defendant Cauley in her individual capacity (collectively, "ECHA Defendants") for violations of the FHA, § 1982, and the Equal Protection clause, with leave to file a motion to amend the Complaint. [DE 83]. The claims for due process violations against the City Defendants and ECHA Defendants remained pending.

On April 13, 2020, Plaintiffs filed the instant Motion to Amend, seeking to amend their Complaint to allege claims against all Defendants for intentional violations of the FHA, violations of the FHA by disparate impact, violations of § 1982, violations of the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment, and claims of personal liability against Defendants Mayor Copeland and Director Cauley. The City Defendants filed a response on April

2

27, 2020, and on May 4, 2020, Plaintiff filed a reply. On May 27, 2020, the ECHA Defendants and the Corporate Defendants filed responses to the Motion to Amend, and the Corporate Defendants filed the instant Motion for Judicial Notice. Plaintiffs filed a combined response and reply brief on July 2, 2020.

**II.     Standard of Review**

A party may amend a pleading with the Court's leave, and the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, if the underlying facts or circumstances relied upon by a plaintiff are potentially a proper subject of relief, the party should be afforded an opportunity to test the claim on the merits. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The decision whether to grant or deny a motion to amend lies within the sound discretion of the district court. *Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990). However, leave to amend is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991) (citing *Foman*, 371 U.S. at 183). An amendment is futile if the new claims "could not withstand a motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted." *Moore v. State of Ind.*, 999 F.2d 1125, 1128 (7th Cir. 1993).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

3

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008). In ruling on a motion to dismiss, a court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Twombly*, 550 U.S. at 555-56; *Tamayo*, 526 F.3d at 1082.

### III. Analysis

Plaintiffs seek to amend their Complaint to add additional facts and allegations against all Defendants. They allege that Defendants were motivated by racism and disregard for families with children when they first developed the Complex on contaminated land and continued to hide the extent of the contamination as long as possible, knowing that the residents were primarily minorities and families with children, and then evicted the tenants once they could no longer hide the extent of the contamination. Plaintiffs allege that the Corporate Defendants were aware of but hid the scope of the contamination on the land prior to their 2014 settlement with the EPA, and that they coordinated with the City Defendants and ECHA Defendants to evict the residents from the Complex and repurpose the land for commercial use rather than remediating it for housing, to benefit the Corporate Defendants. In particular, Plaintiffs seek to amend and clarify their claims arising under the Fair Housing Act, both for intentional discrimination and disparate impact on protected classes, § 1982, and the Equal Protection Clause.

A. <u>Discrimination Claims: City and ECHA Defendants</u>

The Fair Housing Act makes it unlawful to refuse to rent to, to "otherwise make unavailable or deny," and "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a), (b). "A violation of the FHA can be proven against a city or other locality by demonstrating that a city policy or practice either has a discriminatory intent or, under some circumstances, a discriminatory effect, or disparate impact" *City of Joliet v. Mid-City Nat'l Bank of Chicago*, No. 05 CV 6746, 2014 WL 4667254, at *22 (N.D. Ill. Sept. 17, 2014), *aff'd sub nom. City of Joliet, Illinois v. New W., L.P.*, 825 F.3d 827 (7th Cir. 2016).

Plaintiffs seek to amend their claims of discrimination under the FHA against the City Defendants and the ECHA Defendants. Plaintiffs allege that they were discriminated against on the basis of their race and family status by the City Defendants and ECHA Defendants, who evicted them from their homes in the summer of 2016 and allegedly treated them poorly before the eviction. Defendants argue that "Plaintiffs still have not shown in their Proposed Amended Complaint that the City Defendants' [sic] intentionally discriminated against them because they are Black," City Def. Resp. Br. at 4 [DE 96], and that amendment would be futile because Plaintiffs do not identify any similarly situated people outside of the protected classes that were treated differently than Plaintiffs. Despite Defendants' arguments about appropriate comparators or specific factual allegations of intentional discrimination, at the pleading stage a complaint need only include the type of discrimination alleged to have occurred, its timing, and the identity of those alleged to be responsible. *Herndon v. Hous. Auth. of S. Bend, Indiana*, 670 F. App'x 417,

5

418-19 (7th Cir. 2016) ("The district court erred when it required Herndon to plead more specific facts that would establish the defendants' discriminatory intent because nothing more was required for Herndon to state a claim of racial discrimination" on a motion to dismiss.); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) (reversing district court's motion to dismiss Fair Housing Act claims because "[the plaintiff]'s complaint identifies the type of discrimination that she thinks occurs (racial), by whom . . . , and when . . . [and] [t]his is all that she needed to put in the complaint"); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("[A] complaint is not required to allege all, *or any*, of the facts logically entailed by the claim. A plaintiff does not have to plead evidence. A complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing.") (quoting *Am. Nurses' Ass'n v. State of Ill.*, 783 F.2d 716, 727 (7th Cir.1986)) (internal quotation marks omitted); *see also Tamayo*, 526 F.3d at 1084 ("[O]nce a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim.") (quoting *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781–82 (7th Cir. 2007)) (citing *Bennett*, 153 F.3d at 518; *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006)). Plaintiffs have sufficiently stated a claim for intentional discrimination under the Fair Housing Act, and amendment of their claim is appropriate.

Plaintiffs also seek to amend their Complaint to include allegations that the eviction and the actions of the City Defendants and ECHA Defendants around the eviction had a disparate impact on Black people and families with children. "[S]tat[ing] a disparate impact claim under the FHA requires allegations that Defendants' actions, despite being unintentional, had a 'discriminatory effect' upon a protected class." *Cty. of Cook v. HSBC N. Am. Holdings Inc.*, 136

6

F. Supp. 3d 952, 966 (N.D. Ill. 2015) (quoting *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1289-90 (7th Cir.1977). Plaintiffs have alleged, and included census data showing, that the Complex had a higher percentage of Black residents than the city as a whole and more Black residents than at least one of the remaining low-income housing complexes administered by ECHA. The City Defendants argue that one of the other housing complexes in the city had a higher percentage of Black residents than the West Calumet Complex did. The fact that a single, smaller complex had a slightly higher percentage of Black residents than that of the closed Complex is not fatal to the disparate impact claim at this stage, since it is apparent that the effect of the closure had an outsized effect on the protected classes of Black residents. *See Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) ("It is enough to plead a plausible claim, after which 'a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.' A full description of the facts that will prove the plaintiff's claim comes later, at the summary-judgment stage.") (quoting *Twombly*, 550 U.S. at 563). Similarly, the percentage of children at the Complex was much higher than that in the rest of the City or other identified ECHA facilities. The City Defendants argue that the percentage of children is an inaccurate representation of the protected class of families with children, but the percentage of children is an adequate indirect measure of the percentage of family unit at this stage of the proceedings. At this stage of the proceedings, Plaintiffs' Proposed Amended Complaint sufficiently alleges a disparate impact claim under the FHA and amendment is appropriate.

Plaintiffs' Proposed Amended Complaint also states claims for violations of § 1982 and for violations of their Fourteenth Amendment right to equal protection. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's

7

jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co. v. Dakota Cty., Neb.*, 260 US 441, 445 (1923)) (internal quotation marks omitted). Accordingly, an equal protection claim in this context requires an allegation of government action that intentionally discriminated against Plaintiffs because of their membership in a protected class. *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989); *Trigg v. Fort Wayne Cmty. Sch.*, 766 F.2d 299, 300 (7th Cir. 1985). Similarly, "[t]o state a claim under § 1982, plaintiffs must allege that the defendant had a racial animus, intended to discriminate against the plaintiff, and deprived the plaintiff of protected rights because of the plaintiff's race." *Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845, 850 (N.D. Ill. 2003); *see also Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 616 (1987) ("Section 1982 guarantees all citizens of the United States, 'the same right . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property.' The section forbids both official and private racially discriminatory interference with property rights.") (quoting 42 U.S.C. § 1982) (citing *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968)).

As described above, Plaintiffs have satisfactorily alleged that the evicted Complex residents were members of protected classes, Black and family units, and that the City Defendants and ECHA Defendants, government entities and actors, took away their right to lease real property at the Complex because of their membership in protected classes. Their motion to amend is not futile with respect to their claims against the City Defendants and ECHA Defendants arising under § 1982 and the Equal Protection Clause of the Fourteenth Amendment.

B. <u>Discrimination Claims: Individual Defendants</u>

Plaintiffs also seek to amend their claims against Mayor Copeland and Director Cauley individually. In particular, Plaintiffs seek to allege claims of personal liability against Mayor Copeland and Director Cauley for violations of Plaintiffs' § 1982 rights to property, the Equal Protection Clause, and §§ 3406(a), (b) and 3617 of the Fair Housing Act.

In order to state a claim for constitutional violations against individual officers, Plaintiffs must allege "a causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017); *see also Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003) ("§ 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim."). Plaintiffs allege that Mayor Copeland personally knew about the contamination of the Complex before 2016 and worked with Director Cauley to hide the contamination from the Complex's residents. They allege that Mayor Copeland and Director Cauley were part of a scheme to transfer the property to private actors, rather than have the property be remediated for continued residential use, in exchange for political support from the private actors. In addition, Plaintiffs specifically allege that Director Cauley and Mayor Copeland acted with the intention to discriminate against Black tenants and those who were families with children.

Although the ECHA Defendants do not include any specific arguments about why the proposed amendments are futile as to Director Cauley, the City Defendants argue that the additional allegations are insufficient to state a claim to hold Mayor Copeland individually liable for participation in the alleged scheme to transfer the land to private actors. While the claims against the Corporate Defendants have been dismissed and will not be revived, as discussed below,

9

Plaintiffs have sufficiently alleged that Mayor Copeland and Director Cauley personally discriminated against members of protected classes by interfering with their rights to lease property at the Complex, because of Plaintiffs' family status and/or because they are Black. Amendment of the Complaint to include claims that Mayor Copeland and Director Cauley are individually liable for violations of Plaintiffs' § 1982 rights to property, the Equal Protection Clause, and § 3406(a), (b) of the Fair Housing Act is appropriate. The claims arising under § 3617 are addressed below.

      C.      Intimidation Claims

Plaintiffs also seek to assert new claims arising under § 3617 of the FHA. To state a claim under 42 U.S.C § 3617, Plaintiffs must allege that they are (1) "protected individual(s) under the FHA" who are (2) "engaged in the exercise or enjoyment of [their] fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff[s] on account of [their] protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate." *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009). Defendants' interference must rise to the level of "a 'pattern of harassment, invidiously motivated.'" *Id*. (quoting *Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004). Plaintiffs allege that Mayor Copeland's directive ordering immediate relocation of the Complex residents and the subsequent communications about relocation were pretextual since the contamination of the property had been known for a long time and the eviction was part of a scheme to turn the land over to corporate entities for commercial development. They allege that Director Cauley was part of the scheme and involved in the decision to issue the directive and allege generally that the City Defendants and the ECHA Defendants engaged in otherwise unspecified "coercive conduct."

The kind of harassment contemplated by § 3617 is often violent, *see Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845, 851-52 (N.D. Ill. 2003) ("Illustrative cases [of prohibited discriminatory conduct] have involved acts such as cross-burning, firebombing homes or cars, shooting shotguns, physical assaults, or throwing Molotov cocktails.") (listing cases), and always must go beyond a quarrel or isolated act of harassment to be actionable. *Halprin*, 388 F.3d at 330 (describing "other, less violent but still effective, methods by which a person can be driven from his home and thus 'interfered' with in his enjoyment of it" including sexual harassment and economic pressure) (listing cases). Official communications from government officials to tenants about a required eviction are not coercion, threats, or intimidation as prohibited by 42 U.S.C. § 3617. Plaintiffs may not amend their Complaint to include these claims against the entities or against either Director Cauley or Mayor Copeland individually.

        D.      Corporate Defendants

As an initial matter, the Corporate Defendants filed a motion requesting that the Court take judicial notice of numerous deeds recorded in the time period from 1946 to 1970 that they argue confirm the historical ownership chain of the Complex. Plaintiffs argue that the Court may take note that certain deeds were recorded but cannot use the deeds to prove the truth of anything contained therein. A court may take judicial notice of a document filed in another court not for the truth of the matters asserted, but only to establish the fact of such litigation and related filings. *Opoka v. I.N.S.*, 94 F.3d 392, 395 (7th Cir. 1996). The Court finds that judicial notice should extend only to the fact that these deeds are of public record, without consideration of the matters contained within.

All claims against the Corporate Defendants were dismissed on September 27, 2017. They argue that the claims against them were dismissed with prejudice and cannot now be amended. Plaintiffs now seek to amend their Complaint to reallege the previously dismissed claims and add claims against the Corporate Defendants for violations of § 1982, the Equal Protection Clause, and the Due Process Clause.

Although the claims against these defendants have been dismissed, that does not foreclose the instant Motion. As the Seventh Circuit Court of Appeals has explained, even after dismissal of a complaint for failure to state a claim, "the district court retains the discretion to treat a Rule 15(a) motion as one also made under Rules 59 or 60." *Camp v. Gregory*, 67 F.3d 1286, 1290 (7th Cir. 1995) (citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1112 (7th Cir. 1984); *Paganis v. Blonstein*, 3 F.3d 1067, 1074 (7th Cir. 1993)) (finding no abuse of discretion in the district court considering a motion to amend complaint after case was terminated on motion to dismiss). Motions to reconsider will be granted in situations of misunderstanding, errors of apprehension, changes in the law, or discovery of significant new facts. *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011), *overruled on other grounds by Hill v. Tangherini*, 724 F.3d 965, 967 n.1 (7th Cir.2013) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)).

In this case, although Plaintiffs have not explicitly requested relief pursuant to Rule 59 or 60, they argue that there was an error of law or fact in the previous opinion granting the Corporate Defendants' Motions to Dismiss and that new evidence has come to light. In particular, all of the Complex residents have now been evicted from the land and plans have come to light to have the land repurposed for commercial use rather than remediated for housing, plans that Plaintiffs assert will financially benefit the Corporate Defendants. However, the new details do not save the

previously dismissed claims, and addition of the new claims is inappropriate since they would be futile. As described above, Plaintiffs' Proposed Amended Complaint fails to state a claim under § 3617 of the Fair Housing Act for harassment by any of the defendants.

Plaintiffs seek to assert claims of intentional discrimination against the Corporate Defendants. The Fair Housing Act makes it unlawful to "make unavailable or deny" housing and to discriminate in housing rental or "in the provision of services or facilities in connection therewith," 42 U.S.C. § 3604(a), (b), and a claim for violation of § 1982 requires Plaintiffs to "demonstrate [] interference with property rights," including the right to lease real property. *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 991 F.2d 1249, 1257 (7th Cir. 1993) (citing 42 U.S.C. § 1982). Plaintiffs do not allege that the Corporate Defendants owned or administered the Complex or the land on which it was built, either now or while Plaintiffs lived there. Plaintiffs allege that the Corporate Defendants coordinated with the City and the ECHA to conceal the dangers posed by the contamination and exerted influence on the City and the ECHA to evacuate the Complex so that the Corporate Defendants would profit from the planned remediation and development, but there is no allegation that the Corporate Defendants themselves acted in any direct way to make housing unavailable to Plaintiffs. Although in their reply brief Plaintiffs mention cases in which intentional pollution was found to be actionable under the Fair Housing Act, Pl. Rep. Br. at 8 [DE 116], Plaintiffs have not included any claims of intentional pollution of a minority neighborhood in their Proposed Amended Complaint.

As to the other claims, the "Fourteenth Amendment[] to the Constitution protect[s] citizens from conduct by the government, but not from conduct by private actors, no matter how egregious

13

that conduct might be." *Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). Accordingly, Plaintiffs' claims against the Corporate Defendants for violation of rights to due process[1] and equal protection require allegations of a conspiracy between the private and state actors. Plaintiffs "must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). "[M]ere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 51, 205 L. Ed. 2d 43 (2019) (citing *Fries*, 146 F.3d at 458)).

Plaintiffs reiterate and expand upon their assertion that, "[u]pon information and belief, [the Corporate Defendants] . . . have designs on the subject property and are among, or behind, the potential developers" and that they "secretly planned this in coordination with the City and the ECHA." Prop. Am. Compl. ¶ 20 [DE 91-1]. However, "[a] complaint must allege 'some specific facts to support the legal claims asserted.'" *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013) (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir.2011)). "[M]ere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her [is] not enough." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (upholding motion to dismiss where "[t]he complaint . . . , though otherwise detailed, is bereft of any suggestion, beyond a bare conclusion, that the remaining defendants were leagued in a conspiracy" and "[n]o factual

---

[1] The Court notes that Plaintiffs include no argument about their due process claims against the Corporate Defendants in either their opening brief or reply brief, but analyzes them here for completeness.

allegations tie the defendants to a conspiracy with a state actor"); *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("[A]t the pleading stage . . . plaintiffs' '[f]actual allegations must be enough to raise a right to relief above the speculative level.' . . . [C]ourts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim.") (quoting *Twombly*, 550 U.S. at 555). Plaintiffs admit that they are merely guessing that the Corporate Defendants are behind the bid to redevelop the land. Mere assertions of this kind are insufficient, even at the pleading stage. Plaintiffs' claims rely on suppositions of a secret conspiracy between the Corporate Defendants and the other Defendants and would not survive a motion to dismiss. Accordingly, the motion to amend the complaint is denied as to the Corporate Defendants, who are no longer parties to this case.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the Request for Judicial Notice in Support of Atlantic Richfield Company and BP Product North America Inc.'s Opposition to Plaintiffs' Motion for Leave to File First Amended Complaint [DE 106] as described above.

The Court **GRANTS in part and DENIES in part** Plaintiffs' Plaintiffs' Motion for Leave to File First Amended Complaint [DE 91]: The Court **GRANTS** the motion insofar as it seeks to amend the Complaint to add claims of discrimination against the City of East Chicago and East Chicago Housing Authority, and against East Chicago Mayor Anthony Copland and East Chicago Housing Authority Director Tia Cauley in their official and individual capacities, including claims for discriminatory intent and disparate impact in violation of the Fair Housing Act 42 U.S.C. § 3604(a), (b), violations of § 1982, and violations of the Equal Protection Clause and the Due

15

Process Clause of the Fourteenth Amendment. The Court **DENIES** the motion to amend the Complaint as to all claims against Defendants BP Products North America, Inc., Atlantic Richfield Company, and E.I. du Pont de Nemours and Company and all claims under 42 U.S.C. § 3617.

The Court **ORDERS** Plaintiffs to file an amended complaint consistent with this Opinion and the Opinions granting previous motions to dismiss by **April 21, 2021**. Defendants' answers are to be filed in accordance with Federal Rule of Civil Procedure 12(a).

SO ORDERED this 24th day of March, 2021.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc:   All counsel of record  
      Counsel for Atlantic Richfield Company, BP Products North America Inc.,  
      and E. I. du Pont de Nemours and Company