UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KENDRA MABRY, *et al.*,<br>   Plaintiffs,<br><br>   v.<br><br>CITY OF EAST CHICAGO, *et al.*,<br>   Defendants. | )<br>)<br>)<br>)  CAUSE NO.: 2:16-CV-402-JVB-JEM<br>)<br>)<br>) |

**AMENDED FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on Defendants' Motion to Dismiss [DE 129], filed by Defendants City of East Chicago, Anthony Copeland, East Chicago Housing Authority and Tia Cauley on May 26, 2021. Plaintiffs filed a response on June 28, 2021, and on July 19, 2021, Defendants filed a reply. On August 5, 2021, the Court held a hearing and granted Plaintiffs leave to file a surreply. Plaintiffs filed that surreply on August 13, 2021, and on August 26, 2021, Defendants filed a response to the surreply.

On May 27, 2021, District Court Judge Joseph Van Bokkelen entered an Order [DE 132] referring Defendants' Motion to Dismiss to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

For the following reasons, the Court recommends that the District Court grant the motion to dismiss.

I.  **Background**

Plaintiffs, residents of the East Chicago Housing Authority ("ECHA") affordable housing development known as the West Calumet Housing Complex ("Complex") in East Chicago, Indiana, filed a Complaint on September 15, 2016. It included claims against Defendants for violations of the Fair Housing Act ("FHA"), the Fourteenth Amendment right to due process of law, the Fourteenth Amendment right to equal protection, and of Plaintiffs' property rights under the Civil Rights Act (42 U.S.C. § 1982), all arising out of the eviction and closure of the Complex in the summer of 2016. Plaintiffs allege that Defendants knew or should have known that the Complex was contaminated with toxic substances, including arsenic and lead, but hid the extent of the contamination from the Complex's residents. In June or July of 2016, tenants received a directive signed by East Chicago Mayor Anthony Copeland stating that the City of East Chicago and ECHA had recently been informed of the contamination and that the Complex residents needed to relocate quickly. They allege that Tia Cauley, the director of ECHA, was involved in the decision to issue the directive.

Defendants all filed motions to dismiss the original Complaint, and a number of claims were dismissed, with leave to file motions to amend in part. On March 24, 2021, Plaintiffs' motion to amend was granted in part, and an Amended Complaint was filed on April 21, 2021. Defendants now move to dismiss several of the claims in the Amended Complaint.

II.  **Standard of Review**

To survive a Rule12(b)(6) motion to dismiss for failure to state a claim, the complaint must first provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008). In ruling on a motion to dismiss, a court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Twombly*, 550 U.S. at 555-56; *Tamayo*, 526 F.3d at 1082.

### III. Analysis

Defendants agree that Plaintiffs have adequately alleged a claim for disparate treatment under the Fair Housing Act and an equal protection claim under the 14th Amendment. They argue that the disparate impact claim under the FHA in Counts III and IV fails because it is based on an alleged one-time decision to close the Complex rather than on a broader policy, that the civil rights claim in Count V fails because the Complex was demolished and no housing remained available after it was denied to Plaintiffs, and that the due process claim in Count VII fails because a state court breach of contract claim provides sufficient process for their claim of alleged breach of lease. Defendants also argue that the related individual claims against Defendants Cauley and Copeland should also be dismissed.

#### A. Disparate Impact

Defendants argue that Plaintiffs' claim for disparate impact under the Fair Housing Act fails because it is based on a one-time decision to close the Complex rather than a broader policy. The Fair Housing Act makes it unlawful to refuse to rent to, to "otherwise make unavailable or deny," and "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith because of

race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a), (b). "A violation of the FHA can be proven against a city or other locality by demonstrating that a city policy or practice either has a discriminatory intent or, under some circumstances, a discriminatory effect, or disparate impact" *City of Joliet v. Mid-City Nat'l Bank of Chi.*, No. 05 CV 6746, 2014 WL 4667254, at *22 (N.D. Ill. Sept. 17, 2014), *aff'd sub nom. City of Joliet, Ill. v. New W., L.P.*, 825 F.3d 827 (7th Cir. 2016).

In this case, Plaintiffs have sufficiently alleged that the closure of the Complex had a discriminatory effect. Defendants now argue that Plaintiffs' disparate impact claim fails because they have not alleged a locality policy or policies caused the discriminatory effect, since the one-time decision to close the Complex is not a policy. In particular, Defendants argue that there is no zoning law or ordinance alleged to be responsible for the harm in this case, but that tenants were displaced from the Complex as a result of a single decision. Plaintiffs argue that the Complaint includes allegations of a scheme that includes building the Complex on contaminated land, failing to warn occupants of the contamination, and then evicting Plaintiffs to make the land more profitable. However, a multi-decade scheme involving a series of decisions by many different actors is not the sort of zoning law or housing restriction the FHA is intended to address.

"[A] disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542, 135 S. Ct. 2507, 2523, 192 L. Ed. 2d 514 (2015). As the Supreme Court explained, "[t]he FHA . . . was enacted to eradicate discriminatory practices within a sector of our Nation's economy. These unlawful practices include zoning laws and other housing restrictions that function unfairly to exclude minorities from certain neighborhoods without any sufficient justification." *Id*. at 539. Accordingly, "[d]isparate-impact

4

analysis looks at the effects of policies, not one-off decisions." *City of Joliet, Ill. v. New W., L.P.*, 825 F.3d 827, 830 (7th Cir. 2016) (finding no disparate impact because "condemnation of Evergreen Terrace is a specific decision, not part of a policy to close minority housing in Joliet"); *see also Texas Dep't of Hous.*, 576 U.S. at 543, 544 ("For instance, a plaintiff challenging the decision of a private developer to construct a new building in one location rather than another will not easily be able to show this is a policy causing a disparate impact because such a one-time decision may not be a policy at all" and "as to governmental entities, they must not be prevented from achieving legitimate objectives, such as ensuring compliance with health and safety codes.").

Defendants argue that the decision to close the Complex was a one-time decision, not a policy of closing housing for members of protected classes. Plaintiffs have alleged that they were treated badly by a variety of different actors, apparently motivated by greed and either racial animus or lack of concern that their actions had a disproportionate negative impact on members of protected classes. However, the Amended Complaint does not point to a specific policy or policies causing the discriminatory effect. *Cf. Cty. of Cook, Ill. v. Wells Fargo & Co.*, 314 F. Supp. 3d 975, 992 (N.D. Ill. 2018) (finding claim for disparate impact sufficiently alleged where "[f]irst . . . the County identifies a set of related statistical disparities . . and [s]econd, . . . the County identifies a policy—Wells Fargo's equity-stripping practice—to which it attributes the alleged statistical disparity"). Furthermore, to the extent that Plaintiffs are arguing that there was a policy of allowing them to live on contaminated land, that is not a claim for deprivation of housing. Plaintiffs have only identified individual decisions, not a policy or policies to which they attribute the statistical disparity, and have therefore failed to state a claim for disparate impact under the FHA. Accordingly, the Court recommends that the claims for disparate impact under the Fair Housing Act in Counts III and IV be dismissed.

B. Section 1982

Defendants argue that Plaintiffs fail to state a claim for housing discrimination under the Civil Rights Act because the Complex was closed, making it unavailable to anyone for housing. The Civil Rights Act provides, "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. "To state a claim under § 1982, plaintiffs must allege that the defendant[s] had a racial animus, intended to discriminate against the plaintiff[s], and deprived the plaintiff[s] of protected rights because of the plaintiff[s'] race." *Whisby-Myers v. Keikenapp*, 293 F. Supp. 2d 845, 850 (N.D. Ill. 2003) (citations omitted).

Defendants argue that the Section 1982 claim consists of bare conclusions that do not meet the pleading requirements, and that read in the context of the Amended Complaint, the claim fails because housing or rental opportunities must remain available and offered to others in order for there to be a Section 1982 violation. *See Phillips v. Hunter Trails Cmty. Ass'n*, 685 F.2d 184, 190 (7th Cir. 1982) ("To make out their prima facie case under the Fair Housing Act, they had only to show that they were black, that they applied for and were qualified to buy the Broderick house, that they were rejected, and that the Broderick house remained on the market.") Plaintiffs argue that there was a period of time during which housing in the Complex remained available to others after Plaintiffs were evicted and before the Complex was demolished. However, the Amended Complaint specifically alleges that the Civil Rights Act was violated because "[Defendants] did not invite White citizens to lease and enjoy defective, substandard and dangerous housing and then evict them under pretext." ¶ 135. Because the housing was not available to anyone after all of the tenants were evicted, Plaintiffs have not stated a claim for violation of the Civil Rights Act, and the Court recommends that Count V be dismissed.

6

C. Due Process

Defendants argue that Plaintiffs' due process claim is based on an alleged breach of lease, and that because there is a state law cause of action they have not suffered any lack of sufficient process. Plaintiffs allege in Count VII that they were ordered to leave their homes without due process, depriving them of property rights without notice and the opportunity to be heard. Defendants do not dispute that Plaintiffs had a property interest in the Complex because of their leases, but argue that Plaintiffs can obtain the process they are due through a state law action. Plaintiffs argue that a judgment of eviction was required but was not obtained and that Plaintiffs have therefore not had the opportunity to be heard. District Court Judge James Moody addressed a similar due process claim in another case involving the Complex closure and concluded: "Any process to which [the displaced tenants] were due is adequately served by a state-law breach of contract claim." *Walker v. E I Du Pont De Nemours & Co.*, No. 2:16 CV 367, 2018 WL 6198447, at *4 (N.D. Ind. Nov. 27, 2018) (citing *Lafayette Linear v. Vill. of Univ. Park, Ill.*, 887 F.3d 842, 844 (7th Cir. 2018); *Kay v. Bd. of Educ. of City of Chi.*, 547 F.3d 736, 739 (7th Cir. 2008); *Ind Land Co. v. City of Greenwood*, 378 F.3d 705, 710 (7th Cir. 2004)).

Indeed, "for someone who relies on a property interest created by a contract with a public body, the process due when the government arguably has broken its promise is the opportunity to seek damages from a state court." *Lafayette Linear*, 887 F.3d at 844; *see also Taake v. Cty. of Monroe*, 530 F.3d 538, 542-43 (7th Cir. 2008) ("When a state actor breaches a contract it has with a private citizen, and the subject matter of that contract does not implicate fundamental liberty or property interests, the state acts just like any other contracting private citizen, the proper tribunal to adjudicate issues arising from the contract (or alleged contract) is a state court, because contract law is a creature of state law . . . As for procedural due process, the Fourteenth Amendment's Due

Process Clause affords state citizens with the right to notice and an opportunity to be heard before being deprived of 'property' as defined by state law. Taake used the words 'procedural due process' in his complaint, but the remedies he seeks belie any suggestion that Taake is interested in notice and a hearing on the County's decision not to sell him the land . . . Taake wanted the land—not a hearing at which the County would give Taake an opportunity to contest the County's decision not to sell him the land."); *Khan v. Bland*, 630 F.3d 519, 531–32 (7th Cir. 2010) ("Where a postdeprivation hearing not only is feasible but will give the deprived individual a completely adequate remedy due process does not necessarily require a predeprivation hearing.") (internal quotation marks omitted) (quoting *Chi. United Indus., Ltd. v. City of Chi.*, 445 F.3d 940, 944 (7th Cir.2006)) (citing *Ellis v. Sheahan*, 412 F.3d 754, 758 (7th Cir.2005); *Indiana Land Co. v. City of Greenwood*, 378 F.3d 705, 710 (7th Cir.2004)); *Goros v. Cty. of Cook*, 489 F.3d 857, 860 (7th Cir. 2007) (§ 1983 may not be used to determine whether some statute or contract creates a property interest in the abstract; unless the plaintiff maintains that the state actor had to offer a hearing to resolve some contested issue of fact, the dispute belongs in state court under state law."). In short, like the plaintiffs in *Taake* and *Walker*, in this case "plaintiffs do not want process . . . They do not allege that they were entitled to a hearing to resolve a contested issue of fact" prior to the Complex being closed for environmental contamination. *Walker*, 2018 WL 6198447, at *4. The Court recommends that Count VII, Plaintiffs' due process claim, be dismissed, because process is still available to Plaintiffs through a state court action.

D.  <u>Individual Defendants</u>

Defendants also request that the claims for Anthony Copeland's and Tia Cauley's personal liability be dismissed insofar as they are based on the claims described above. Because Plaintiffs' claims for disparate impact under the Fair Housing Act, for violation of Section 1982, and for

violation of due process fail for the reasons described above, the Court recommends that the claims for personal liability against the individual defendants based on those claims also be dismissed.

### IV. Conclusion

For the foregoing reasons, the Court hereby **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss [DE 129] and dismiss Counts III, IV, V, and VII and dismiss counts VIIi and IX insofar as they assert claims for the personal liability of Anthony Copeland and Tia Cauley for the Fair Housing Act disparate impact claims, the claim for violation of Section 1982, and the claim for violation of due process.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 20th day of October, 2021.

> s/ John E. Martin
> MAGISTRATE JUDGE JOHN E. MARTIN
> UNITED STATES DISTRICT COURT

cc:   All counsel of record